Judge Cask:
Upon the ground of jurisdiction, I consider Woodson & al. v. Barrett & Co. 2 Hen. & Munf, 80, an express *216 authority, that equity will injoin a gaming judgment, though the party has failed to defend himself at law, and gives no good reason for such failure. There, the plaintiff in equity produced abundant evidence of the gaming, and, no doubt, might have produced it at law. All he says in his bill, on the subject, is, that his .embarrassed circumstances prevented his giving his attorney proper instructions to malee a defence at law. If the embarrassment of his affairs was not such as to prevent his employing counsel, I cannot conceive, how it could have disabled him from giving the proper instructions. I consider this, therefore, no excuse at all; nor was it considered as of any weight on the trial. The point of jurisdiction was brought directly before the Court. Mr. Copland says, “In this case Woodson had a complete remedy at law, and therefore ought not to be relieved.” This is answered on the other side, not by contending that there was a good cause assigned for failing to make defence at law, but by citing eases, which, it was asserted, justified the interference of equity. Judge Tucker discussed the case at large, and though he does not expressly notice the question of jurisdiction, it cannot be supposed, after it was formally made at the bar, he did not pass upon it in his mind. ' The Court were unanimous. The decision is placed on the ground of the original vice of the transaction. It is said, that the bond being absolutely void in its creation, could be made valid by no subsequent transaction, immediately growing out of it. A distinction is taken between that ease and those of Buckner & al. v. Smith, 1 Wash. 296; and Hoomes, ex’or. v. Smock, 1 Wash. 389, and it is remarked with great strength and propriety, that “the circulation of these gaming bonds, is an evil no less to be discountenanced, than the giving of them; and that no means are more likely to prevent the giving of .them, than to put an effectual stop to their cirdilation.” I consider this, therefore, a direct authority for our interference in the present case.
*217 Another question has arisen, whether Strother, after assigning the bond to Turpin, can, by his answer, impeach that bond, so as to affect Turpin’s interest? A point, worihy, certainly, of grave and careful consideration, when it shall be necessary to decide it. But I do not think such necessity occurs in the case before us. Turpin has filed two answers. The second is to the amended bill, and was filed after Strother had answered. In it he says, “in relation to the subject matter of the plaintiff’s hill, he knows nothing, except what is contained in his first answer, and the answer of the defendant Strother, to which answers, this respondent begs leave to refer, and to insist on the facts therein contained.” By this reference, Turpin, I think, expressly sanctions and adopts the statement of the fact by Strother, that part of the bond was gaming money. By this fact, therefore, Turpin is hound, under the circumstances, without touching the general principle.
It was clearly wrong, in my opinion, to dissolve the injunction for the $> 140; the sum confessedly won at gaining. This sum indeed, forming a part of the bond, would vitiate the whole at law, under the express words of our statute; but the plaintiff having, failed to defend himself there, and coming to ask equity, must do equity. If, therefore, a part of this bond were money fairly and bona fide lent to the plaintiff, or paid at his request to others, such part would be considered as, in honesty and good conscience due; and the interference of equity would not reach it. But I am by no means satisfied that such is the fact. It being clear, that a part of the bond is for money won at gaming, I do not think we ought to suffer the party, by his oath alone, to establish loans made by him to the plaintiff, or paid to others at his request. The bond being utterly void, he can derive no aid from that, and ought to be held, I think, to prove the affirmative and substantive facts, that at the plaintiff’s request, he paid for him $200 to HawMns} and $ 270 to Ross. Besides, the answer of Strother is loose and unsatisfactory; and the whole transaction wears *218 a suspicious aspect. The bond being given to Strother por jilese three sums, renders it not improbable that they were the sums won by Strother, Hawkins and Ross of Skipwith at one sitting, and that Strother took the .bond .to himself for the whole; he undertaking to settle with the others for their shares. It seems hardly probable, that money fairly paid to discharge a bona fide debt, would have been mingled with this gaming money, thereby putting it in the power of the obligor to get clear of the whole.
Upon the whole, I think it would be proper to send back the case to the Court of Chancery, to be proceeded in there, in the usual way for the decision of this point.
Judge Green:
The plaintiff, in this case, seeks relief against a judgment, founded on a bond given in whole or in part for a gaming consideration, without stating that there was any impediment to his defence at law; or any excuse for not making that defence; nor that there is any difficulty in now proving, in the Court of Law, the fact that the bond was founded on a gaming consideration. The Court below refused relief, because the plaintiff could now, upon giving-such proof, have the judgment vacated upon motion to the Court of Law, or be otherwise effectually relieved there; the statute having declared judgments given upon a gaming consideration, to be utterly void.
A judgment rendered upon an agreement of the parties, that such judgment should be confessed or rendered without defence, as a security for a gaming debt, would unquestionably come'within the statute, and might be vacated upon motion. But I doubt whether a. judgment for a gaming debt, rendered adversely, and without any such agreement, would come within the statute. But it is not necessary to examine this point minutely, since I am satisfied that a Court of Equity has an original and independent jurisdiction to relieve, not only against securities for *219 gaming debts, by ordering them to be surrendered, (although the parly might avoid them at law by pleading the statute) but against judgments for such debts; and this merely for the reason that they are gaming debts. The Legislature has manifested the most anxious solicitude to suppress gami:.;;.i anti, as Was said by the Chancellor in Fleetwood v. Jansen & al. 2 Atk. 467, “The enforcing of the gaming act, is of great consequence to the public, and not confined to the interest of private persons.” In Marsden v. Shadwell, Atk. 269, the Court decreed a bond for money wort at play, a part of which had been paid, to be delivered up, and the money to be re-paid; and in Newman v. Franeo, 2 Anstr. 519, a bill for an injunction, and to have certain bills of exchange, upon which an action had been commenced at; law, delivered up, they having been given for money won at play, was ruled to he good, upon demurrer. And in Woodson & al. v. Barrett & Co. 2 Hen. & Munf. 80, the plaintiff sought relief against a judgment upon a bond given for money won at play, without shewing any excuso for not making the defence at law, the statement that “ from the embarrassed situation of his (the, plaintiff’s) affairs, he was unable to give such instructions to his attorney, in defending the said suit, as would have defeated the plaintiffs,” and that “ his witnesses were absent on the trial,-” certainly did not present any reasonable excuse for not defending himself at law. Nor were these statements relied upon, cither by the counsel or the Court, as shelving such excuse; and the Court were unanimous in reversing the decree, and awarding a perpetual injunction to the judgment.
If any part of tho bond in question were on good consideration, although the bond would be void at law, a Court of Equity, upon the principle that he who asks equity, must do it, (upon which principle, the Court allows even a judgment obtained by fraud, to stand as a security for what is justly due,) would not relieve against the judgment, except to the extent of the gaming considera *220 tion. In the case of Fleetwood v. Janson & al. before cited, a mortgage (the mortgagor being plaintiff,) was ordered to stand as a security for the money bona fide advanced, but to be forfeited as to the money won at play; although the statute of Anne declared all securities void, if the consideration, or any part of it, was for money lost at play. It is, however, premature, in the present stage of this cause, to decide now, whether any part of the bond was given for a good consideration. This should be reserved for the final hearing of the cause. The money said to have been paid to others, for Skipwith, may have been, and probably was, for money lost by him, at the same time with $ 140 lost to Strother.
It is not necessary in this case, to enquire, how far the answer in Chancery, of a party, may be evidence, in such a case as this, against another claiming under him, by a title antecedent to the time of putting in the answer. That is probably a question deserving great consideration. But in the case at bar, the defendant, the assignee of the bond, does not deny the allegations of the bill. He only says, that he does not know whether they be true or false. I do not think that such an answer justifies the dissolution of an injunction; especially when the other defendant, privy to the fact, admits the truth of the bill, in part.
The order dissolving the injunction,.should be reversed.
Judges Coai.ter, Cabell and the President, concurred, and the order dissolving the injunction, was accordingly reversed.